UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MARIO POWELL and
LASHONDA POWELL,

       Plaintiffs,

v

STATE FARM FIRE AND
CASUALTY COMPANY,

       Defendant.

Case No. 2:15-cv-13342
Hon. David M. Lawson

Magistrate Judge Mona K. Majzoub

---

**JOSEPH MILANOWSKI (P47335)**
**AMY L. DIVINEY (P77164)**
**MELAMED, DAILEY, LEVITT &**
**MILANOWSKI, P.C.**
Attorneys for Plaintiffs
26611 Woodward Avenue
Huntington Woods, Michigan 48070
(248) 591-5000
joemilanowski@mdlm-pc.com

**CARY R. BERLIN (P64122)**
**PAUL H. JOHNSON, JR. (P26871)**
**KATELYN M. DEPREKEL (P78765)**
**PATRICK, JOHNSON & MOTT, P.C.**
Attorneys for Defendant
27777 Franklin Road, Suite 1400
Southfield, Michigan 48034
(248) 356-8590
cberlin@pjmpc.com

---

<u>**STATE FARM'S RESPONSE IN OPPOSITION TO PLAINTIFFS' MOTIONS TO EXCLUDE THE OPINION TESTIMONY OF DAVID STAYER AND THOMAS PAWLYN, DEFENDANT'S ORIGIN AND CAUSE EXPERTS**</u>

For the reasons stated in the attached brief, the Defendant, State Farm Fire and Casualty Company ("State Farm"), through its attorneys, Patrick, Johnson and Mott, P.C., requests this Honorable Court deny the Plaintiffs' Motions to exclude the testimony of its experts, David Stayer (Docket No. 18) and Thomas Pawlyn (Docket No. 19), and denying Plaintiffs' request to strike State Farm's "arson defense."

Respectfully submitted,

**PATRICK JOHNSON & MOTT, P.C.**

*s/ Cary R. Berlin*
Attorneys for Defendant
27777 Franklin Road, Suite 1400
Southfield, Michigan 48034
248-356-8590
cberlin@pjmpc.com
P64122

Dated: June 16, 2016

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MARIO POWELL and
LASHONDA POWELL,

      Case No. 2:15-cv-13342
      Hon. David M. Lawson

      Plaintiffs,

v

      Magistrate Judge Mona K. Majzoub

STATE FARM FIRE AND
CASUALTY COMPANY,

      Defendant.

---

**JOSEPH MILANOWSKI (P47335)**
**AMY L. DIVINEY (P77164)**
**MELAMED, DAILEY, LEVITT &**
**MILANOWSKI, P.C.**
Attorneys for Plaintiffs
26611 Woodward Avenue
Huntington Woods, Michigan 48070
(248) 591-5000
joemilanowski@mdlm-pc.com

**CARY R. BERLIN (P64122)**
**PAUL H. JOHNSON, JR. (P26871)**
**KATELYN M. DEPREKEL (P78765)**
**PATRICK, JOHNSON & MOTT, P.C.**
Attorneys for Defendant
27777 Franklin Road, Suite 1400
Southfield, Michigan 48034
(248) 356-8590
cberlin@pjmpc.com

---

<u>**BRIEF IN SUPPORT OF**</u>
<u>**STATE FARM'S RESPONSE IN OPPOSITION TO PLAINTIFFS' MOTIONS TO**</u>
<u>**EXCLUDE THE OPINION TESTIMONY OF DAVID STAYER AND THOMAS**</u>
<u>**PAWLYN, DEFENDANT'S ORIGIN AND CAUSE EXPERTS**</u>

## Table of Contents

Statement of Issues Presented..............................................................................iii

Index of Cited Authorities ...................................................................................iv

Introduction .........................................................................................................1

Counter Statement of Facts..................................................................................2

Messrs. Stayer's and Pawlyn's Opinions about the Fire .....................................4

The Plaintiffs' Fire Investigators .........................................................................6

Standard of Review ..............................................................................................7

Law and Argument ...............................................................................................9

   A. The Admissibility of Expert Testimony under the Federal Rules .........................9

   B. Mr. Pawlyn's Opinions Regarding the Electrical System are the Product of Reliable Principles and Methods and are, therefore, Admissible ....................................10

   C. David Stayer's Opinions Regarding the Origin and Cause of the Fire are the Product of Reliable Principles and Methods, are Consistent with NFPA 921, and are therefore, Admissible..........................................................................................12

   D. Messrs. Stayer and Pawlyn Properly Documented and Preserved the Fire Scene in Accordance with NFPA 921...................................................................................13

   E. David Stayer's Use of the Process of Elimination in Determining the Cause of the Fire is Consistent with the Scientific Method and NFPA 921......................................14

   F. There is Sufficient Evidence to Submit State Farm's Arson Defense to a Jury Even if Mr. Stayer's opinion regarding the cause of the fire is not admissible.....................................17

Conclusion...........................................................................................................19

Relief Requested..................................................................................................20

## <u>Statement of Issues Presented</u>

I.      Should State Farm's Experts, David Stayer and Thomas Pawlyn, be Permitted to Offer Opinion Testimony at Trial?

II.     Is there Sufficient Evidence to Submit State Farm's Arson Defense to a Jury Even if Mr. Stayer's opinion regarding the cause of the fire is not admissible?

## Index of Cited Authorities

**Cases**                                                                    **Pages**

*Barr v Farm Bureau General Ins Co,*
(unpublished opinion from the Michigan Court of Appeals,
decided February 15, 2011) ................................................................................. 15

*Clay v. Ford Motor Co.,*
215 F.3d 663, 667 (6th Cir. 2000) ..................................................................... 8

*Crossley v Allstate Ins Co,*
139 Mich App 64; 362 NW2d 760 (1984) ......................................................... 18

*Daubert v Merrill Dow Pharmaceuticals,*
509 U.S. 579, 592, 596; 113 S. Ct. 2786 (1993) ................................ 8, 10, 11, 13

*Decker v. GE Healthcare Inc.,*
770 F.3d 379, 391 (6th Cir. 2014) ..................................................................... 7

*George v Travelers Indemnity Co,*
81 Mich App 106; 265 NW2d 59 (1978) ........................................................... 18

*Khumo Tire Co, Ltd. v. Carmichael,*
526 U.S. 137, 149, 152; 119 S.Ct. 1167 (1999) ............................................... 8

*Little Hocking v. du Pont,*
90 F. Supp. 3d 746, 764 (S.D. Ohio 2015) ................................................... 10, 13

*McLean v. 988011 Ont., Ltd.,*
224 F.3d 797, 800-01 (6th Cir. 2000) ............................................................... 10

*O-So Detroit v Home Ins Co,*
973 F2d 498 (6th Cir. 1992) ............................................................................. 18

*People v Moore,*
Mich App. Doc. No. 313565 (8/19/14) ............................................................. 19

*People v Porter,*
269 Mich 284; 257 NW 705 (1934) ................................................................... 17

*Peterson v Oceana Circuit Judge,*
243 Mich 215; 219 NW 934 (1928) ................................................................... 17

*Pride v BIC Corporation,*
218 F. 3d. 566 (6th Cir. 2000) ........................................................................... 10

*Tamraz v. Lincoln Electric Co.,*
620 F.3d 665, 672 (6th Cir. 2010) ...................................................................8

*United States v Bonds,*
12 F.3d 540 (6th Cir. 1993) ...........................................................................8

*United States v. Stafford,*
721 F.3d 380, 395 (6th Cir. 2013) .................................................................10

*Walz v Peninsular Fire Ins Co,*
221 Mich 326, 343; 191 NW 230 (1922) ........................................................18

## Other Authority                                                    <u>Pages</u>

*Alford v Allstate* ..........................................................................................16

NFPA 921 ...................................................1, 9, 10, 11, 12, 13, 14, 15, 16, 19, 20

## Rules of Evidence                                                  <u>Pages</u>

FRE 104 .......................................................................................................12

FRE 702 ...................................................................1, 9, 10, 12, 13, 20

## INTRODUCTION

This case arises from a fire that occurred on April 15, 2014 at the premises located at 9995 Brady Street, Redford, Michigan. At the time of the fire, the Brady Street property was owned by the Plaintiffs and insured by State Farm under a homeowner's policy.

Based upon its investigation, State Farm ultimately denied coverage based, in part, upon its belief that the April 15, 2014 fire was intentionally set by and/or at the direction of the Plaintiffs for the fraudulent purpose of attempting to recover under State Farm's policy.

The Plaintiffs now move to exclude the opinions of State Farm's fire investigators, David Stayer and Thomas Pawlyn, regarding the origin and cause of the fire, claiming that their investigations were not based upon reliable principles and methods for fire investigations. Plaintiffs also improperly claim their inability to render an opinion was caused by State Farm experts' failure to remove electrical components from the home. Plaintiffs knew, however, that as of April 30, 2014, that State Farm was questioning whether the fire was accidental and they could have retained experts at that time to inspect the electrical components. Furthermore, removal of the electrical components would have been contrary to NFPA 921.

As discussed in greater detail below, State Farm submits that Mr. Stayer's opinions regarding the origin and cause of the fire are the product of reliable principles and methods for fire investigation and that his testimony is, therefore, admissible under FRE 702. Similarly, Mr. Pawlyn's opinions regarding the lack of an electrical cause of the fire are also the product of reliable principles and methods for fire investigation, meaning his testimony is also admissible under FRE 702.

Finally, the Plaintiffs claim that State Farm's defense that the fire was intentionally set by and/or at the direction of the Plaintiffs should also be dismissed in anticipation that the Court will

exclude the experts' opinions. State Farm submits that, even if the Court were to preclude both expert witnesses from offering opinion testimony, there is still sufficient evidence to support its defense under the intentional acts exclusion of the policy. Therefore, the Plaintiffs request to strike State Farm's "arson defense" should also be denied.

## COUNTER STATEMENT OF FACTS

The fire at the Plaintiffs residence occurred on April 15, 2014. The Plaintiffs notified State Farm of the fire on the same day.

### (Investigations into the Origin and Cause of the Fire)

State Farm retained fire investigator David Stayer of Rehmann Corporate Investigative Services to examine the scene of the fire and determine the origin and cause thereof. It is undisputed that Mr. Stayer is an experienced and highly qualified origin and cause expert. (Mr. Stayer's curriculum vitae is attached as **Exhibit "1"**).

Mr. Stayer examined the scene of the fire on April 18, 2014 (Stayer investigative report 5/5/14 **Exhibit "2"**). Based upon his observations of the burn patterns, Mr. Stayer concluded that the fire originated in the basement of the residence in the space above the suspended ceiling, and below the floor joists for the main floor (**Exhibit "3"** at pg. 11).

Mr. Stayer also observed electrical wiring and fixtures in the area of the fire's origin. Accordingly, he arranged to have the premises examined by an electrical engineer to determine what role, if any, the electrical system may have played in causing the fire at the Brady Street property.

Mr. Stayer returned to the scene of the fire with electrical engineer Thomas Pawlyn on April 24, 2014. Based on his examination and investigation, Mr. Pawlyn concluded that the

electrical system did not cause the fire at the Plaintiffs' residence. Rather, he opined that the electrical wiring above the suspended ceiling was energized and was attacked by the fire.

Ultimately, Mr. Stayer concluded that the fire was intentionally set since the only accidental source of ignition in the area of origin, the electrical system, had been eliminated as a potential source of ignition for the fire. He reported his findings and conclusions to State Farm.

(State Farm's Investigation)

On April 30, 2014, State Farm claim specialist Kristen Braun met with the Plaintiff, Mario Powell, and explained that there was a question as to whether the fire was accidental, and that there was a question as to whether he had made material misrepresentations. Mr. Powell acknowledged these issues and, in fact, signed the non-waiver of rights agreement at Ms. Braun's request. (Request for Claim Service and Non-Waiver of Rights, **Exhibit "3"**).

Ms. Braun also conducted a recorded interview of Mr. Powell on April 30, 2014 (recorded interview 4/30/14, **Exhibit "4"**). During the course of that interview, Mr. Powell suggested that a neighbor may have had a similar fire one year before the fire at his house, explaining:

A. "I mean, it affected uh it didn't uh it didn't affect it, we had uh I don't know the I think the lady a few yards down had a fire. I don't know um, we had uh, you know, we had plenty of like power."

Q. Okay. When did the um lady a few yards down have a fire?

A. I don't recall I want to say maybe a year or so ago.

Q. And do you know her name?

A. Um M-Melanie*****

Q. And do you know, Melanie's last name?

A. No.  (**Exhibit "4"** transcript at pg. 18).

3

More than four months later, Mr. Powell, for the first time, admitted that he not only new "Melanie's" last name (Johnson), but that she had rented a barber chair from him at his place of business before the fire. (**Exhibit "5"** examination under oath transcript at pgs.19-21).

On or shortly before July 22, 2014, the Plaintiffs retained attorney Joseph Milanowski of Huntington Woods, Michigan to represent them in connection with their claims under State Farm's policy (**Exhibit "6"** 7/22/14 Retention Letter). Mr. Milanowski was present at Mr. Powell's examination under oath on September 17, 2014 and has continued to represent the Plaintiffs since that time.

(Matt Vowell's Testimony About the Events Following the Fire)

On February 8, 2016, Matt Vowell, a neighbor of the Plaintiffs, was deposed in connection with this litigation. (**Exhibit "7"** 2/8/16 Dep. Tr. of M Vowell). Mr. Vowell testified that he discovered the fire and notified Mr. Powell. (**Id.** at pgs. 12-15). He also advised that the residence was secured at the time of the fire. (**Id** at pg. 16).

Mr. Vowel testified that, after the fire was extinguished, he entered the residence with Mr. Powell and a lieutenant from the fire department. He indicated that Mr. Powell told him that a small safe was the only article left in the house of any value, and that "everything else was, the pictures and everything else was in the garage so they were safe." (**Id.** at pgs. 19-20).

Mr. Vowell also advised that he had been inside the Plaintiffs' garage several times before the fire and that, after the fire, there were several large items of furniture and boxes of photo albums in the garage. (**Id.** at pg. 21). Mr. Vowell also stated that he found it odd that the Plaintiffs' son was not at home when the fire occurred. (**Id.** at pgs. 28-29).

## MESSRS. STAYER'S AND PAWLYN'S OPINIONS ABOUT THE FIRE

David Stayer, who investigated this fire on behalf of State Farm, has been deposed in connection with this litigation. (**Exhibit "8"** Stayer Det. Tr., 3/15/16). He testified that he followed the scientific method and conducted his investigation consistent with the guidelines set forth in the National Fire Protection Association's Guide for Fire and Explosion Investigations (**Id.** at pgs. 132, 157, 160). With respect to his findings regarding the origin of the fire at the Brady Street property, he explained:

> A.    "Correct. The conclusion of my investigation on the 18th, the area of origin was high at ceiling level, most damage above the bathroom area and extending away from the area of the circuit breaker panel." (**Id.** at pg. 131).

Mr. Stayer testified that the only competent ignition source in the area of the fire's origin was the electrical wiring and components (**Id.** at pg. 132). He, therefore, developed a hypothesis that an electrical fault may have caused the fire (**Id.** at pg. 125). He then made arrangements to have the fire scene examined by electrical engineer Thomas Pawlyn.

Thomas Pawlyn was deposed in this case on March 16, 2016 (**Exhibit "9"** Pawlyn Dep. Tr. 3/16/16). He testified that he examined the scene with Mr. Stayer on April 24, 2016 (**Id.** at pgs. 55-56).

Mr. Pawlyn also testified that he followed the scientific method in connection with his examination of the electrical components at the Plaintiffs' residence. (**Id.** at pgs. 82-83). He stated that, upon the conclusion of his examination, he found no evidence that the electrical system had caused the fire (**Id.** at pgs. 139-140).

After the examination of the electrical components by Mr. Pawlyn, Mr. Stayer concluded that the fire was incendiary, writing:

> Based on information and evidence available to me at the time of my investigation, it is my opinion that this fire is the result of an intentional human act. An electrical exam and arc mapping eliminated an electrical

cause and with the elimination of all other accidental causes, I am of the opinion that this fire could only have started with the introduction of a combustible material on top of a lay- in ceiling tile and ignited with an open flame. (**Exhibit "2"** 5/5/14 investigative report at pg. 11).

## THE PLAINTIFFS' FIRE INVESTIGATORS

On May 2, 2015, 18 months after the fire, the Plaintiffs retained fire investigator Robert J Trenkle to investigate the fire. (**Exhibit "10"** Trenkle Dep. Tr. at pg 6). He admitted that, although he drove by the Powell residence, he never went inside. (**Id**. at pg. 14).

Accordingly, Mr. Trenkle advised that he has no opinion regarding the cause of the fire, and admitted that he is not claiming that David Stayer was wrong about where the fire may have originated, explaining:

Q.    and let me ask you about that. I mean, have you ever testified that a fire was intentionally set where you did not know or have the source of ignition?

**A.    oftentimes the match, or the lighter is gone.**

Q.    All right.

**A.    That's  correct.**

Q.    All right. And so you don't-- you wouldn't find it at all unusual or abnormal if the source of ignition for an intentionally set fire was not able to be located or known?

**A.    That's correct.**
                                          * * *
Q.    all right. Now, if I understand, that had to do with the arc mapping and the electrical examination and so on, and your criticism there is pretty much the same as it is with Mr. Stayer, they didn't incorporate a large enough area into their---

**A.    Yes.**

Q.    - analysis?

**A.    Right.**

Q.   Okay.

A.   **I'm - again, not saying that Mr. Stayer is wrong about his--- where the fire may have originated—**

Q.   I understand. Okay.

A.   **I am saying that a lot of other things were just not considered- (Id.** at pgs. 82, 100-101).

Mr. Trenkle also admitted that it was appropriate for Mr. Stayer to use the process of elimination to determine that the fire was intentionally set in this matter, stating that:

Q.   But the process of elimination is a part of and a time honored part of the scientific method?

A.   **Yes**

\* \* \*

Q.   All right. Now let me ask you a question here. That's-- you know, if you were in Mr. Stayer's place in this particular investigation and you were convinced that a broad enough area was incorporated into the area of origin and a comprehensive electrical examination by a competent electrical engineer who you relied upon told you this electrical system did not cause the fire, would-- my question, would you have a problem using the process of elimination to arrive at a cause?

A.   **No, the process of elimination is absolutely perfect and in fact--**

Q.   Okay.

A.   **-if in fact-**

Q.   all right.

A.   **you could eliminate everything but the electrical- (Id.** at pgs. 101-104).

## STANDARD OF REVIEW

In *Decker v. GE Healthcare Inc.*, 770 F.3d 378, 391 (6th Cir. 2014), the Sixth Circuit

Court of Appeals held that:

. . .[a] district court's decision to admit or exclude the testimony of a party's expert witness for abuse of discretion. *Kumho Tire*, 526 U.S. at 152; *Sigler*, 532 F.3d at 478. As the Supreme Court explained in *Kumho Tire*, "[t]he trial court must have the same kind of latitude in deciding how to test an expert's reliability, and to decide whether or when special briefing or other proceedings are needed to investigate reliability, as it enjoys when it decides whether or not that expert's relevant testimony is reliable." 526 U.S. at 152. The abuse of discretion standard "applies as much to the trial court's decisions about how to determine reliability as to its ultimate conclusion." *Id.* Accordingly, the district court has "broad latitude" to determine "whether *Daubert's* specific factors are, or are not, reasonable measures of reliability in a particular case." *Id.* at 153.

The Supreme Court has also held that the inquiry under the guidelines set forth in *Daubert v Merrill Dow Pharmaceuticals* 509 U.S. 579; 113 S. Ct. 2786 (1993) is a flexible one, and that the District Court's function is to determine whether the principles and methodology underlying the expert's testimony are valid. *United States v Bonds,* 12 F.3d 540 (6th Cir. 1993); *Khumo Tire Co, Ltd. v. Carmichael,* 526 U. S. 137; 119 S.Ct. 1167 (1999).

The Sixth Circuit has explained that where the testimony of a proffered expert is challenged for insufficient "factual basis, data, principles, methods, or their application . . . the trial judge must determine whether the testimony has a reliable basis in the knowledge and experience of [his or her] discipline." *Kumho Tire*, 526 U.S. at 149 (quoting *Daubert*, 509 U.S. at 592). The Court need not necessarily hold a *Daubert* hearing to determine the admissibility of expert testimony but, nonetheless, must ensure that the disputed testimony is both relevant and reliable. See, *Clay v. Ford Motor Co.*, 215 F.3d 663, 667 (6th Cir. 2000).

Finally, in *Tamraz v. Lincoln Electric Co.*, 620 F.3d 665, 672 (6th Cir. 2010), the Court explained that "Rule 702 . . . does not require anything approaching absolute certainty. And where one person sees speculation, we acknowledge, another may see knowledge, which is why

the district court enjoys broad discretion over where to draw the line." (internal citations omitted)).

## LAW AND ARGUMENT

The Plaintiffs do not dispute that David Stayer is qualified by his training and experience to offer opinion testimony regarding origins and causes of fires under FRE 702. (See Plaintiffs ' "Stayer" Brief at page 1). Similarly, the Plaintiffs do not dispute Thomas Pawlyn's qualifications and experience to testify regarding "electrical issues" relating to fires. (Plaintiff's "Pawlyn" brief at pg. 1). Rather, the Plaintiffs are challenging the admissibility of Messrs. Stayer's and Pawlyn's opinions because, in Plaintiffs' view, they are not the product of reliable principles and methods for the investigation of fires, and because they are inconsistent with NFPA 921.

State Farm submits that Mr. Stayer's opinions regarding the origin and cause of the April 15, 2014 fire at the Plaintiffs' residence are consistent with NFPA 921 and are the product of reliable principles and methods to establish the origin and cause of fires. State Farm also submits that the opinion of Mr. Pawlyn, wherein he eliminated the electrical system of the Brady Street property as a source of ignition for the fire, is also the product of reliable principles and methods. Both opinions are, therefore, admissible at the trial over this matter.

### A.     The Admissibility of Expert Testimony under the Federal Rules.

Fed. R. Evid. 702 governs the admissibility of expert testimony. The rule provides that:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> (a)     the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;

(b)     the testimony is based on sufficient facts or data;

(c)     the testimony is the product of reliable principles and methods; and

(d)     the expert has reliably applied the principles and methods to the facts of the case.

In *Daubert v Merrill Dow Pharmaceuticals* 509 U.S. 579, 113 S. Ct. 2786 (1993), the U.S. Supreme Court "established guidelines for the district courts to use in determining the admissibility of expert testimony pursuant to Rules 702 and 104 of the Federal Rules of Evidence." The Sixth Circuit has ruled that the *Daubert* guidelines require the trial court to focus on the principles and methodology applied by the expert, and not to second-guess the validity of conclusions reached by the expert. *Pride v BIC Corporation* 218 F. 3d. 566 (6th Cir. 2000.)

As the Sixth Circuit has noted, "mere 'weaknesses in the factual basis of an expert witness' opinion . . . bear on the weight of the evidence rather than on its admissibility.'" *McLean v. 988011 Ont., Ltd.*, 224 F.3d 797, 800-01 (6th Cir. 2000) (citation omitted). See also, *Little Hocking v. du Pont*, 90 F. Supp. 3d 746, 764 (S.D. Ohio 2015)("critiques of an expert's evidence gathering techniques . . . generally go to the weight of the evidence, not its admissibility"), citing *United States v. Stafford*, 721 F.3d 380, 395 (6th Cir. 2013).

**B.     Mr. Pawlyn's Opinions Regarding the Electrical System are the Product of Reliable Principles and Methods and are, therefore, Admissible.**

Mr. Pawlyn, an electrical engineer, has testified that he followed the scientific method as outlined in NFPA 921 during his investigation of the electrical system at the Brady Street property. (**Exhibit "9"** at pgs. 82-83). He explained that he performed arc mapping of the

10

electrical system to assist in his investigation and to more clearly define the direction in which the fire traveled. (**Id**. at pgs. 133-136).

Ultimately, Mr. Pawlyn concluded that the electrical system that was located in the area where Mr. Stayer determined the fire originated did not cause the fire. (**Id**. at pgs. 139-140). His opinion is based upon reliable principles, a sound methodology and is consistent with the guidelines set forth in NFPA 921 regarding the application of the scientific method. Furthermore, the Plaintiffs' claim that Mr. Pawlyn improperly determined the origin of the fire is misplaced. Specifically, Mr. Pawlyn testified unequivocally, that he left the determination of the origin of the fire to Mr. Stayer. (**Id**. at pg. 137).

Rather, Mr. Pawlyn simply assisted Mr. Stayer in more clearly defining the area where the fire originated indicating that, based upon the arc mapping, he believed the fire originated approximately 21 inches east of the west wall and east of the circuit breaker panel. (Exhibit "B" at pg. 10).

Similarly, the Plaintiffs' claim that Mr. Pawlyn's failure to remove materials from the scene prevented their experts, who were not hired for another 18 months, from examining the items is equally misplaced.

Nothing prevented the Plaintiffs or their attorneys from retaining experts to examine the scene, as State Farm's experts properly preserved the scene in accordance with NFPA 921's guidelines (see section *D, infra*).

Moreover, the Plaintiffs' complaints with Mr. Pawlyn go to the weight of his testimony, not its admissibility. See, *Hocking, supra*, and *Daubert*, 509 U.S. at 596 ("This Court's 'gatekeeper role . . . is not intended to supplant the adversary system or the role of the jury: vigorous cross-examination, presentation of contrary evidence, and careful instruction on the

burden of proof are the traditional and appropriate means of attacking evidence a party finds lacking).

Accordingly, Mr. Pawlyn's opinion is admissible under FRE 702, and the Plaintiff's Motion (Docket No. 19) should be denied.

**C.** **David Stayer's Opinions Regarding the Origin and Cause of the Fire are the Product of Reliable Principles and Methods, are Consistent with NFPA 921, and are, therefore, Admissible.**

Like Mr. Pawlyn, David Stayer testified that he followed the scientific method and conducted his investigation consistent with the guidelines set forth in NFPA 921. (**Exhibit "8"** at pgs. 132, 157, 160). He explained in detail how he read the burn patterns and arrived at an area of origin for the fire (**Id.** at pgs. 143-148). Ultimately, Mr. Stayer concluded that the fire originated above the lay in ceiling in the basement bathroom and below the wood floor joists supporting the main floor of the structure. (**Id.** at pgs. 132-131).

This opinion regarding the origin of the fire is the product of reliable methods for fire investigation. In fact, the Plaintiffs' own fire investigator (Mr. Trenkle) agrees with Mr. Stayer's methodology of investigating this fire, admitting:

> Q.      and so if I understand you correctly, although you may have some criticisms about their opinions either in terms of the area of origin or the cause of the fire, you don't disagree with the protocol that they use to conduct this investigation?
>
> A.      No.
>
> Q.      you think it was appropriate and proper?
>
> A.      Yes. (**Exhibit "10"** at pg. 42).

Again, while the Plaintiffs may disagree with Mr. Stayer's conclusions, those disagreements are matters for cross-examination, not a basis for a motion to exclude the expert's opinions.

Messrs. Stayer and Trenkle have different opinions as to where the fire at the Plaintiffs' residence originated. Both parties have reasons why, in their view, the other party's experts opinions are incorrect.

Such disagreements between experts are common. However, because it is undisputed that Mr. Stayer's methodology was proper (as admitted by Mr. Trenkle), the task of resolving the disagreement as to the origin of this fire is for the jury, not this Court. Despite the Plaintiffs' disagreement, Mr. Stayer's opinion regarding the origin of the fire is clearly admissible under FRE 702, and the Plaintiffs' Motion (Docket No. 18), should be denied.

Finally, while the Plaintiffs' attempt to rely on Lt. Allen of the Redford Fire Department regarding the origin and cause of the fire (Motion at Pg ID  ), that argument is misplaced, as Lt. Allen admitted he is not a certified fire investigator, and that he relies on someone else to perform any investigations. (Allen Dep. Tr. at pg. 11). Nevertheless, even if Lt. Allen was qualified to render an opinion as to the origin and cause of the fire (which he is not), that would still merely go to the weight of the expert's testimony, not its admissibility. See, e.g., *Hocking, supra*, and *Daubert*, 509 U.S. at 596.

### D.    Messrs. Stayer and Pawlyn Properly Documented and Preserved the Fire Scene in Accordance with NFPA 921.

In their motions to exclude Messrs. Pawlyn and Stayer's opinions, the Plaintiffs claim that the investigators should have removed the electrical components of the residence for further examination. In addition to the Plaintiffs' seeking to blame State Farm's experts for not removing items that remained in the Plaintiffs' possession (their house), and are seeking to punish State Farm because they delayed hiring their own experts, their complaints violate the express provisions of NFPA 921.

Specifically, NFPA 921 instructs fire investigators on the importance of preserving the scene of a fire, providing that:

> Every attempt should be made to protect and preserve the fire scene as in tact and undisturbed as possible, with the structure, contents, fixtures, and furnishings remaining in their pre-fire locations. (**Exhibit "11"** NFPA 921 Chapter 17 Sec 17.3.1 (2014 Ed.)

Here, Messrs. Stayer and Pawlyn left the fire scene as secure and undisturbed as possible. However, the Plaintiffs now claim that they should have removed the electrical components from the residence, thereby disturbing the fire scene, simply because the Plaintiffs' fire investigators failed to examine the scene of the fire.

By their own admission, the Plaintiffs investigators were not retained until May 2, 2015, 18 months _after_ the fire occurred. Although the Plaintiffs claim that they were unaware of any issues relating to the cause of the fire until March of 2015 (Stayer Motion at pg. 6; Pg ID 156), that argument is contradicted by the facts, as it is clear they were advised on April 30, 2014 that there were questions about the cause of the fire and whether they made material misrepresentations. (**Exhibit "3"**).

Furthermore, the Plaintiffs have been represented by an attorney experienced in fire litigation since at least July 22, 2014. Under the circumstances of this case, there is no basis for blaming State Farm's investigators for Plaintiffs' alleged inability to examine the electrical components when there were aware of State Farm's concerns as early as April 30, 2014.

Messrs. Stayer and Pawlyn preserved the fire scene in accordance with NFPA 921. The Plaintiffs' claim that State Farm's investigators should have removed electrical components of the residence is misplaced, and inconsistent with provisions of NFPA 921.

**E.      David Stayer's Use of the Process of Elimination in Determining the Cause of the Fire is Consistent with the Scientific Method and NFPA 921.**

Plaintiffs' complaint that Mr. Stayer improperly used the process of elimination in determining that the fire was intentionally set is misplaced. In support of this complaint, the Plaintiffs cite section 19.6.5 of Chapter 19 of NFPA 921, arguing he misused a "negative corpus" analysis to arrive at a cause of a fire.

However, NFPA 921 explains that the process of elimination is an integral part of the scientific method. (**Exhibit "11"** NFPA 921 Chapter 19 Sec. 19.6.5). In addition, many investigators agree that the process of elimination may be used to determine that a fire was incendiary, even though the source of ignition is unknown. This includes the Plaintiffs' expert, Robert Trenkle, who testified that the process of elimination is a part of and a time honored part of the scientific method. (**Exhibit "10"** at pg 82.). Mr. Trenkle has also testified that, in his opinion, Mr. Stayer's use of the process of elimination to determine the fire was incendiary was appropriate (though he disagreed with his ultimate conclusion)(**Id.** at pgs. 103-104).

Finally, even if utilizing the process of elimination was not permitted by NFPA 921, that would not render Mr. Stayer's investigation improper. NFPA 921 is a guide; it is not mandatory that all fire investigators follow or agree with every provision therein. In fact, NFPA 921 expressly provides that:

> 1.3.3 Not every portion of this document may be applicable to every fire or explosion incident. <u>It is up to investigators</u> (depending on their responsibility, as well as the purpose and scope of their investigation) to apply the appropriate recommended procedures in this <u>guide</u> to a particular incident. (NFPA 921 Sec 1.3.3, **Exhibit "11"**).

Courts in Michigan (as well as in other jurisdictions) have never held that if an investigator does not follow NFPA 921, he/she is per se prohibited from testifying. In fact, quite the opposite. See, i.e., *Barr v Farm Bureau General Ins Co* (unpublished opinion from the Michigan Court of Appeals, decided February 15, 2011), wherein the Court found:

15

We conclude that the trial court did not abuse its discretion in admitting [the fire investigator's] testimony. A former detective sergeant in the Michigan State Police Fire Marshal Division, Draper had investigated about 2000 fires and testified as an expert 115 times. Plaintiff's main criticism was with Draper's methodology, which allegedly deviated from a guideline known as NFPA (National Fire Protection Association) 921. This guide states that samples should be taken to confirm the presence of an ignitable liquid, and the investigator should not rely on visual interpretation of an irregular fire pattern to term a fire incendiary, because such patterns may have other causes. NFPA 921, § 6.17.8.2.2 to 6.17.8.2.5. However, NFPA 921 also states in § 1.3 that deviations from its procedures are not necessarily wrong, but need to be justified. Draper's testimony showed that he did not rely on the visual interpretation alone. He used the scientific method, consistent with NFPA 921, to examine the structure and pinpoint the origin of the fire as a rear bedroom occupied by plaintiff and his girlfriend. (Emphasis added)(opinion attached as **Exhibit "12"**).

Similarly, Magistrate Judge David Grand of this Court issued an opinion in a case where an expert was challenged for allegedly failing to strictly adhere to the principles stated in NFPA 921. In *Alford v Allstate*, Judge Grand found that, while NFPA 921 is a well-respected guide, it, " . . . itself states, it is merely a guide for investigators, and it includes only non-mandatory provisions." *Id.* at p. 5. Judge Grand went on to explain that:

"Nor is NFPA 921 all-encompassing, as it recognizes that 'every fire and explosion incident is in some way unique and different from any other.' NFPA 921 ch. 1.3.2. As a result, the text merely provides that '[the scientific method] should be applied in every instance,' and that '[deviations from these procedures] are not necessarily wrong or inferior but need to be justified.' NFPA 921 ch. 1.3, 1.3.2" *Id.* at p. 5. (Opinion attached as **Exhibit "13;"** offered solely as instructive)

Mr. Stayer explained his process for investigating this fire. He developed hypothesis, tested them, called in another expert, and ultimately, through the process of elimination, was able to reach a conclusion as to the cause of the fire at the Brady Street property. That investigation and conclusion were entirely appropriate, and completely consistent with both the scientific method and NFPA 921. Plaintiffs are free to cross-examine Mr. Stayer on his investigation and

conclusion. However, there is no factual or legal basis to preclude the jury from hearing his opinion as to the cause of the fire at the Brady Street property.

>**F.**  **There is Sufficient Evidence to Submit State Farm's Arson Defense to a Jury Even if Mr. Stayer's opinion regarding the cause of the fire is not admissible.**

Finally, the Plaintiffs argue that in the event Messrs. Stayer and Pawlyn are precluded from testifying as to their opinions about the origin and cause of the fire, this Court would then be compelled to dismiss State Farm's defenses that the Plaintiffs set or arrange for the setting of the fire.

>Although the Plaintiffs are improperly attempting to present a motion for summary judgment without proper authority, their argument that State Farm's arson defense fails if Mr. Stayer is precluded from offering his opinion as to the cause of the fire, is inconsistent with well-established Michigan law.  Specifically, and as a general rule:In cases of arson, proof of the corpus delicti requires the showing not only that the building was burned, but that the fire was intentionally or wilfully set.  This proof may be made by circumstantial evidence, and cited authorities forbid neither the drawing of reasonable inferences nor the weighing of probabilities. *Peterson v Oceana Circuit Judge*, 243 Mich 215; 219 NW 934 (1928) (Emphasis added).

The Michigan Supreme Court has also concluded that the incendiary origin of a fire may be established by the acts and conduct of a person having opportunity and motive, reasoning that:

>The crime of arson is so peculiarly one of secrecy that often the only evidence of the unlawful character of the fire is found in the acts and omissions of a person having opportunity and motive.  This is such a case.  Defendant was alone in the house.  Only she knew whether the fire was innocent or evil.  If evil, she set it.  The only means of determining the character of the fire, aside from inconclusive physical evidence, were her conduct and statements and their consistency with innocence or guilt.  Both the corpus delicti and defendant's guilt rest on the same set of facts, and the evidence could not be separated to permit the proof of one without also proving the other. *People v Porter*, 269 Mich 284; 257 NW 705 (1934).

In *George v Travelers Indemnity Co*, 81 Mich App 106; 265 NW2d 59 (1978), the Court discussed the elements of a civil arson defense, writing:

> Where an arson defense is raised by an insurer the burden is on the insurer to prove by a preponderance of the evidence that the plaintiff set the fire to the building or caused it to be set on fire. *Walz v Peninsular Fire Ins Co*, 221 Mich 326, 343; 191 NW 230 (1922). <u>The elements of arson may be established by circumstantial evidence.</u> Where there is independent evidence of the incendiary origins of a fire, Michigan courts have affirmed arson convictions based on circumstantial evidence of motive (such as insurance coupled with business difficulties) plus opportunity (such as access to the building). (Emphasis added).

See also *Crossley v Allstate Ins Co*, 139 Mich App 64; 362 NW2d 760 (1984) and *O-So Detroit v Home Ins Co*, 973 F2d 498 (6th Cir. 1992).

Here, there is a wealth of evidence which establishes that the Plaintiffs had a wrongful connection to the fire. For example, Mr. Powell initially attempted to mislead State Farm into believing that the fire may have been electrical in origin and made vague references to a fire down the street at the home of someone named "Melanie." At the time he made the statements to claim specialist Kristen Braun, Mr. Powell claimed that he did not know Melanie's last name. However, he later admitted that he not only knew Melanie's full name, she used to rent space from him at his barbershop. The Plaintiffs' neighbor, Matthew Vowell, also advised State Farm's investigators that he thought the fire was "peculiar" since, approximately one year earlier, a fire at a home a few doors down originated in almost the identical area where the Powell fire occurred. (**Exhibit "2"** at pg. 9). This was Melanie Johnson's home.

Mr. Powell actively sought to conceal his relationship with Ms. Johnson from State Farm. He did so because he arranged for this fire to be set in a fashion that would suggest that, like the fire at Ms. Johnson's residence, the fire at the Brady Street property was also the result of an electrical failure.

18

However, as determined by Messrs. Stayer and Pawlyn, the fire was not the result of faulty wiring or an electrical malfunction, but was the result of an intentional human act. Accordingly, the Plaintiffs' efforts to conceal their relationship and connection to Ms. Johnson is evidence of their wrongful connection to the April 15, 2014 fire.

In addition, Mr. Vowell, testified that the Plaintiffs moved personal belongings and memorabilia out of their residence and into their garage before the fire occurred. The act of removing personal belongings before a fire has been found to be evidence of arson. (2014 NFPA 921 at Sec. 24.3.3 and 24.3.2, **Exhibit "11"**).

Finally, Mr. Vowell also testified that the house was unusually vacant at the time of the fire, as the Plaintiffs' son was not home which he usually was at that time of day. These facts, coupled with the above evidence, are sufficient circumstantial evidence for a jury to conclude that the Plaintiffs knew a fire was going to occur before it did, and that they had set or arranged for the setting of the fire.

Accordingly, even if Mr. Stayer is prevented from testifying that the fire was incendiary, the jury can clearly reach that conclusion based upon the evidence in the case. Recently, the Michigan Court of Appeals acknowledged such in *People v Moore*, Mich App. Doc. No. 313565 (August 19, 2014) writing:

> The inability of the investigators to conclude that the fire was the result of arson was not dispositive of the jury's ability to do so. (opinion **Exhibit "14"**)

## CONCLUSION

The conclusions and opinions of David Stayer and Thomas Pawlyn regarding the origin and cause of the April 15, 2014 fire are the product of reliable methods and principles used in the field of fire investigation, are consistent with the scientific method and with the treatises

19

regarding fire investigations, including NFPA 921. Their opinions are, therefore, admissible under FRE 702.

In addition, there is sufficient evidence for a jury to conclude that the fire was intentionally set even if Messrs. Stayer and Pawlyn's opinions are not available to assist the jury in this determination. Therefore, regardless of this Court's ruling on the Plaintiffs' motions to preclude the expert's opinions, it should nevertheless deny their request to strike State Farm's arson defenses.

## **RELIEF REQUESTED**

Based upon the foregoing argument and analysis, the Defendant, State Farm Fire and Casualty Company, respectfully requests this Honorable Court enter an Order:

a.   denying the Plaintiffs' Motions to exclude the testimony of its experts, David Stayer (Docket No. 18) and Thomas Pawlyn (Docket No. 19);

b.   Denying the Plaintiffs' request to strike State Farm's "arson defense;" and

c.   Granting State Farm al other relief to which it is entitled.

Respectfully submitted,

**PATRICK JOHNSON & MOTT, P.C.**

*s/ Cary R. Berlin*
Attorneys for Defendant
27777 Franklin Road, Suite 1400
Southfield, Michigan 48034
248-356-8590
cberlin@pjmpc.com
P64122

Date: June 16, 2016

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MARIO POWELL and
LASHONDA POWELL,

        Plaintiffs,

v

STATE FARM FIRE AND
CASUALTY COMPANY,

        Defendant.

Case No. 2:15-cv-13342
Hon. David M. Lawson

Magistrate Judge Mona K. Majzoub

| **JOSEPH MILANOWSKI (P47335)**<br>**AMY L. DIVINEY (P77164)**<br>**MELAMED, DAILEY, LEVITT &**<br>**MILANOWSKI, P.C.**<br>Attorneys for Plaintiffs<br>26611 Woodward Avenue<br>Huntington Woods, Michigan 48070<br>(248) 591-5000 | **CARY R. BERLIN (P64122)**<br>**PAUL H. JOHNSON, JR. (P26871)**<br>**KATELYN M. DEPREKEL (P78765)**<br>**PATRICK, JOHNSON & MOTT, P.C.**<br>Attorneys for Defendant<br>27777 Franklin Road, Suite 1400<br>Southfield, Michigan 48034<br>(248) 356-8590 |
| --- | --- |

## PROOF OF SERVICE

The undersigned certifies that on **June 16, 2016,** copies of **State Farm's Response in Opposition to Plaintiff's Motions to Exclude the Opinion Testimony of David Stayer and Thomas Pawlyn, Defendant's Origin and Cause Experts** and this **Proof of Service** were electronically filed with the Clerk of the Court using the Court's electronic filing system, which will send notification of such filing to all parties to the above cause.

                                        */s/ Jessica Steffes*
                                        Jessica Steffes